IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

```
OCT - 5 2015
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA
```

EDWARD WILSON,          )
                        )   Case No. 1:12-CR-502-2
        Movant,         )
                        )   The Honorable Claude M. Hilton
    v.                  )
                        )
UNITED STATES OF AMERICA )

## MEMORANDUM OF LAW IN SUPPORT OF MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET-ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

COMES Movant, EDWARD WILSON ("Wilson"), appearing *pro se*, and in support of this Motion would show as follows:

### I. JURISDICTION

Wilson is timely filing a Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion") contemporaneously with this Memorandum of Law. Jurisdiction is vested in this District Court that presided over and imposed sentence pursuant to Rule 4(a) of the Rules Governing §2255 Proceedings. See *Liteky v. United States*, 510 U. S. 540, 562 (1994). Under 28 U.S.C.A. § 2255, federal prisoners "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States" may move the district "court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C.A. § 2255(a). Section 2255(f) imposes a one-year limitations period upon the filing of § 2255 motions, which usually runs from "the date on which the judgment of conviction becomes final." 28 U.S.C.A. § 2255(f)(1).

## II. STATEMENT OF THE GROUNDS FOR RELIEF

A.      Whether counsel's failure to: (1) communicate with Wilson and conduct an adequate and independent pretrial investigation inclusive of his failure to research the applicable case law and interview witnesses; and (2) inform and advise Wilson of the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding to trial, as well as the maximum sentence he faced if he was convicted at trial deprived him of effective assistance of counsel as guaranteed under the Sixth Amendment to the Constitution of the United States.

B.      Whether, in light of *Lafler v. Cooper,* 132 S.Ct. 1376 (2012), counsel was ineffective in the plea bargain context under the Sixth Amendment of the Constitution to the United States.

## III. STATEMENT OF THE CASE

### A.      Relevant Procedural Background

On November 29, 2012, a federal grand jury sitting in the United States District Court for the District of Virginia, Alexandria Division, returned a Two-Count Indictment charging Wilson and co-defendant Raymond Ty Collins ("Collins"). See Doc. 34.[1] Count One (1) charged Wilson with Conspiracy to Distribute Five Kilograms or More of Cocaine and 280 Grams or More of Cocaine Base, in violation of 21 U.S.C. §§ 841, 846. *Id.*

On January 8, 2013, the government filed an Information to Establish Prior Conviction Pursuant to 21 U.S.C. § 851. See Doc. 50.

On February 25, 2013, jury trial commenced. See Doc. 103. On February 26, 2013, the jury returned a guilty verdict as to Wilson on Count 1 of the Indictment. See Doc. 105. The Court ordered

---

[1]

"Doc." refers to the Docket Report in the United States District Court for the District of Virginia, Alexandria Division, in Case No. 1:12-cr-00502-CMH-2, which is immediately followed by the Docket Entry Number.

a Presentence Report ("PSR") to be prepared by the U. S. Probation Department.

On May 31, 2013, Wilson was sentenced to 240 months imprisonment, 10-years of Supervised Release, no Fine or Restitution, and ordered to pay a $200 Mandatory Special Assessment Fee. See Doc. 124.

On June 12, 2013, Wilson timely filed a Notice of Appeal. See Doc. 132.

On July 1, 2014, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") Court ultimately affirmed the District Court's judgment. See Doc. 161.

## B. Statement of the Relevant Facts

### 1. Offense Conduct

From 2009 to 2012, Wilson and Raymond Collins ("Collins") were involved in the sale and distribution of illegal drugs in the Houston, Texas, area. See TT. 458. Collins was allegedly capable of obtaining and selling two kilograms of cocaine every two days. See TT. 458. To facilitate his cocaine trafficking, Collins operated a red pick-up truck that was outfitted with a hidden compartment. See TT. 454, 519-21. Collins used this hidden compartment in the center console to store a pistol, cocaine, and cash. See TT. 455. Wilson operated a blue Acura SUV that had a similar hidden compartment in its center console. See TT. 457, 518. Wilson and Collins were allegedly partners in the cocaine business. See TT. 456. On April 12, 2011, Wilson delivered cocaine during a drug sale and accepted payment on behalf of Collins. See TT. 460-64.

In the spring of 2011, Stevie Thornton ("Thornton"), a cocaine dealer from northern Virginia who had recently relocated to Houston, Texas, sought to buy cocaine in Houston to distribute to a customer in northern Virginia. See TT. 375-78. Thornton arranged cocaine deals on behalf of this northern Virginia customer, two of which were sourced by Wilson and Collins. See TT. 459-70.

3

In late 2010, Detective Brian Gavin ("Gavin"), who was assigned to a task force with the Drug Enforcement Administration ("DEA") in northern Virginia, began to investigate Thornton. See TT. 546-47. Gavin learned that Thornton had moved to Houston, Texas, but was still interested in selling cocaine to customers in northern Virginia. See TT. 548. Using a cooperating witness, Gavin arranged for a series of cocaine purchases from Thornton in Houston, Texas. See TT. 548-61. Gavin and other law enforcement agents conducted surveillance during these purchases. *Id.* In total, Gavin arranged for three cocaine purchases from Thornton. Further investigation revealed that Collins supplied the cocaine in two of those deals. See TT. 548-61, 460, 466-67.

On March 26, 2012, Collins was arrested while driving Wilson's Acura SUV after Houston law enforcement agents conducting surveillance of a residence observed a blue Acura SUV arrive. See TT. 528-35. Agents followed Collins to a nearby Wal-Mart parking lot, where they observed him engage in a transaction with the driver of a Nissan Altima. See TT. 524. Around 9 p.m., shortly after leaving the Wal-Mart, Collins was stopped by Houston police officer Le. See TT. 525. Officer Le then told narcotics officers involved in the surveillance that Collins had consented to a search of the Acura SUV. See TT. 526. With the assistance of a K-9 unit, officers found cocaine, approximately $35,000 in cash, and a .45 caliber handgun in a hidden compartment near the console in the Acura. See TT. 526-27.

Wilson and Collins were both charged with conspiracy to distribute five kilograms or more of cocaine and 280 grams or more of crack (Count 1), and Collins alone was charged with possession of a firearm in furtherance of a drug trafficking crime (Count 2). Prior to trial, Collins moved to suppress the evidence from the search of the Acura SUV. The District Court, based largely on hearsay testimony from narcotics agents at the suppression hearing, found that Collins had consented

4

to the search and denied the motion.

### 2.   Trial Proceedings

On February 25, 2013, jury trial commenced. See Doc. 103. The next day, the jury returned

verdicts of guilty for both Wilson and Collins on all counts. TT. 717-18. On the conspiracy charge,

the jury found that Wilson and Collins conspired to distribute at least 5 kilograms of cocaine and at

least 28 grams, but less than 280 grams, of cocaine base. *Id.*

### 3.   Presentence Report Calculations

On April 26, 2013, the PSR was released. See Doc. 112.The PSR recommended a Total

Offense Level of 38 in Criminal History Category V, which yielded an advisory Guideline range of

360 months to life imprisonment. Wilson filed objections to the PSR's recommended offense level

of 38 and Criminal History Category of V. He stated that the offense level should be level 32 in

Criminal History Category III.

### 4.   Sentencing Proceedings

On May 31, 2013, sentencing was held in this case. The Court overruled Wilson's objections

and adopted the PSR calculations as its own. However, the Court granted Wilson a downward

variance from 360 months imprisonment to 240 months imprisonment. See Doc. 158 at 13. Wilson

was sentenced to 240 months imprisonment, 10-years of Supervised Release, no Fine or Restitution,

and a $200 Mandatory Special Assessment Fee. See Doc. 124.

### 5.   Appellate Proceedings

Wilson and Collins filed consolidated appeals. On appeal, they raised the following issues:

1.   Whether the district court erred refusing to voir dire the jury on the burden
     of proof and reasonable doubt.

5

2. Whether the district court erred, pursuant to the doctrine of originalism, by refusing to allow the defendants to argue the law to the jury, including on the issue of unfair mandatory minimum sentences.

3. Whether the district court erred in refusing to provide the jury with written jury instructions.

4. Whether the district court erred in denying Collins' motion to suppress evidence obtained during a search of his vehicle on March 26, 2012.

5. Whether there was insufficient evidence to convict Mr. Wilson of conspiring to distribute five kilograms or more of cocaine and 28 grams or more of cocaine base.

6. Whether the trial court erred at sentencing by holding Mr. Wilson accountable for 150 kilograms of cocaine for guidelines purposes.

7. Whether the district court erred by Failing to Properly Instruct The Jury to make an individualized determination of drug quantity attributable to each defendant based upon *Pinkerton* principles of reasonable foreseeability.

8. Whether the district court committed reversible error in admitting against Mr. Wilson a jail phone call containing prejudicial statements made by Mr. Collins after the conspiracy had ended.

On July 1, 2014, the Fourth Circuit affirmed the appeal. See *United States v. Wilson,* (No.

No. 13-4458)(4th Cir. July 1, 2014)(unpublished).

Wilson did not file a Writ of Certiorari to the Supreme Court of the United States.

## IV. COGNIZABLE ISSUES UNDER 28 U.S.C. § 2255

The function of a §2255 Motion to Vacate, Set Aside or Correct Sentence is to inquire into

the legality of the federal prisoner's detention. See *Heflin v. United States*, 358 U.S. 415, 421 (1959).

Section 2255 provides four grounds that justify relief for a federal prisoner who challenges the

imposition or length of his or her detention: (1) "that the sentence was imposed in violation of the

Constitution or laws of the United States" [*Glover v. United States,* 531 U.S. 198, 203 (2000)]; (2)

"that the court was without jurisdiction to impose such sentence" [*United States v. Gomez-Jimenez,*

750 F.3d 370 (4th Cir. 2014)]; (3) "that the sentence was in excess of the maximum authorized by

law" 28 U. S. C. § 2255 (a) (2008)[*United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011)]; or (4)

6

"that the sentence is otherwise 'subject to collateral attack.'" 28 U. S. C. § 2255 (a) (2008) [*Hill v. United States,* 368 U.S. 424, 428 (1962)]. Despite this apparently broad language, violations of federal law are only cognizable if they involve a "fundamental defect" resulting in a "complete miscarriage of justice." [*Davis v. United States*, 417 U. S. 333, 346 (1974)].

A §2255 Motion requires the district court to either order the government to respond or to hold an evidentiary hearing unless the Motion, files and record of the case demonstrate that no relief is warranted. See *Robinson v. Wix Filtration,* 599 F.3d 403 (4th Cir. 2010) (A motion brought under 28 U. S. C. § 2255 can be denied without a hearing *only* if the motion, files, and records of the case *conclusively show* that the prisoner is entitled to no relief); *United States v. Thomas,* 627 F.3d 534 (4th Cir. 2010); *United States v. Dyess*, 730 F. 2d 354 (4th Cir. 2013) ("Under 28 U. S. C. § 2255, unless the motion and record as constituted show conclusively that relief is not available, an evidentiary hearing should be held.") (quoting *United States v. Cardwell*, 433 F.2d 378 (4th Cir. 2005)).

Upon granting a §2255 Motion, "[t]he court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him . . . or correct the sentence as may appear appropriate." 28 U. S. C. § 2255. The remedy provided in § 2255 is broad and flexible, and entrusts the federal courts with the power to fashion appropriate relief. See *Andrews v. United States*, 373 U. S. 334, 339 (1963).

Ineffective assistance of counsel claims are cognizable in a §2255 setting because they are of constitutional dimension. See *Kimmelman v. Morrison*, 477 U. S. 365, 371-79 and n.3 (1986); *Strickland v. Washington*, 466 U. S. 668 (1984); *United States v. Lavabit,* LLC (In re Under Seal), 749 F.3d 276 (4th Cir. 2014).

To prevail on a claim of ineffective assistance of counsel, Alvarez must show that (1) his counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See *Elmore v. Ozmint,* 661 F.3d 783 (4th Cir. 2011).

The "reasonableness of counsel's challenged conduct" must be judged "on the facts of the particular case, viewed as of the time of counsel's conduct." See *Lockhart,* 506 U. S. at 371(citing *Strickland,* 466 U. S. at 690). In the course of the latter portion of this inquiry, the Court must consider not merely whether the outcome of the defendant's case would have been different but also whether counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair. See *Elmore,* 661 F.3d at 867. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart,* 506 U. S. at 372. Thus, prejudice is measured by current law and not by the law as it existed at the time of the alleged error. See *Fisher v. Univerity of Texas At Austin,* 631 F.3d 231 (4th Cir. 2011).

The familiar two-part test of *Strickland v. Washington,* has been applied by the U. S. Supreme Court and the Fifth Circuit in a wide variety of contextual challenges to the effectiveness of counsel's performance. Defendants can raise ineffective assistance claims concerning performance before trial [*Kimmelman v. Morrison,* 477 U. S. 365, 371-79; *Fowler v. Joyner,* 753 F.3d 446 (4th Cir. 2014) (at a minimum, counsel has the duty to interview potential witnesses and to make an independent investigation of the facts and circumstances of the case)]; performance during trial [*Strickland,* 466 U.S. at 686; *United States v. Blackledge,* 751 F.3d 188 (4th Cir. 2014)]; assistance during sentencing [*Strickland,* 466 U. S. at 687; *United States v. Akinsade,* 686 F.3d 248 (4th Cir.

2012)]; and performance on appeal [*Evitts v. Lucey*, 469 U.S. 387 (1985); *Winston v. Pearson*, 683 F.3d 489 (4th Cir. 2012) (defendant must show that the appeal would have had, with reasonable probability, a different outcome if the attorney adequately addressed the issue]. If counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing," the adversarial process itself becomes presumptively unreliable. *United States v. Cronic,* 466 U. S. 648, 659 (1984).

## V. DISCUSSION

As a preliminary matter, it is respectfully requested that this Court be mindful that *Pro Se* litigants are entitled to liberal construction of their pleadings. See *Williams v. Ozmint,* 716 F.3d 801 (4th Cir. 2013); *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); and *Haines v. Kerner,* 404 U.S. 519, 520 (1972).

A. <u>Counsel's Failure To: (1) Communicate with Wilson and Conduct an Adequate and Independent Pretrial Investigation Inclusive of Her Failure to Research the Applicable Case Law and Interview Witnesses; and (2) Inform and Advise Wilson of the Relevant Circumstances and Likely Consequences of Pleading Guilty as Opposed to Proceeding to Trial, as Well as the Maximum Sentence He Faced If He Was Convicted at Trial Deprived Him of Effective Assistance of Counsel as Guaranteed under the Sixth Amendment to the Constitution of the United States</u>.

(1)    <u>Failure to Conduct an Adequate Independent Pretrial Investigation</u>

Defense counsel has the obligation to conduct a reasonably substantial, independent investigation. The Supreme Court has explained the governing standard:

> Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the

circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland,* 466 U.S. at 690-91.

In this case, Attorney Joan Caroline Robin ("Robin") was Wilson's attorney of record.

With regard to pretrial investigation, Robin failed to conduct an independent pretrial investigation on behalf of Wilson. Although Robin did file several pretrial motions on behalf of Wilson, she did not hire a private investigator. Wilson requested to see the discovery in his case to no avail. He requested that she interview certain witnesses, which she did not interview. Robin relied on the government's case file to prepare for case. She did not conduct any kind of independent pretrial investigation. As such, without any kind of independent investigation, it was impossible for Robin to prepare any kind of an affirmative defense on Wilson's behalf.

With his lack of pretrial investigation, it was also virtually impossible for Robin to properly advise Wilson in this case of whether to plead guilty or proceed to trial.

Accordingly, Robin's performance was deficient during the pretrial investigation phase of this case. Wilson was prejudiced by her deficiency because his attorney could not properly advise him of the best course for him to follow.

(2)   Failure to Communicate and Properly Advise Wilson of the Relevant Circumstances and Likely Consequences

During the time of his pretrial detention, Wilson made numerous attempts to discuss his case with Robin. He requested discovery in his case. However, Robin was unprepared to discuss in any meaningful way the relevant circumstances or likely consequences of his case with him. Rule 1.4 of the Virginia State Bar of Professional states:]

Communication

    (a)    A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

    (b)    A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

    (c)    A lawyer shall inform the client of facts pertinent to the matter and of communications from another party that may significantly affect settlement or resolution of the matter.

Based on the above, Robin in no way complied with the Virginia Rules of Professional Conduct in this case. Wilson was wholly uninformed of the relevant circumstances and likely consequences if he pled guilty or proceeded to trial.

### B.    In Light of *Lafler v. Cooper*, 132 S.Ct. 1376 (2012), Counsel Was Ineffective in the Plea Bargain Context under the Sixth Amendment of the Constitution to the United States.

The Supreme Court has made clear that "[t]he Sixth Amendment requires effective assistance of counsel at critical stages of a criminal proceeding." *Lafler*, 132 S. Ct. at 1385. "The constitutional guarantee applies to pretrial critical stages that are part of the whole course of a criminal proceeding, a proceeding in which defendants cannot be presumed to make critical decisions without counsel's advice." *Id.* Convictions by guilty plea—which make up between ninety-four and ninety-seven (97) percent of convictions nationwide[2]—"have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process . . . that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages." *Frye*, 132 S. Ct. at 1407. "Indeed, this Circuit has observed that providing

---

    [2]

    "Ninety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas." *Frye*, 132 S. Ct. at 1407 (citing, *inter alia*, *Padilla*, 559 U.S. at 372 ("Pleas account for nearly 95% of all criminal convictions.")

counsel to assist a defendant in deciding whether to plead guilty is '[o]ne of the most precious applications of the Sixth Amendment.'" *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004)). Thus, before a defendant decides whether to plead guilty, "counsel's function as assistant to the defendant [gives rise to] the overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions" after "mak[ing] reasonable investigations." *Strickland*, 466 U.S. at 688, 691.

Counsel has "the critical obligation . . . to advise the client of 'the advantages and disadvantages of a plea agreement,'" *Padilla*, 559 U.S. at 370 (quoting *Libretti v. United States*, 516 U.S. 29, 50-51 (1995)). Effective advice from counsel regarding the relevant circumstances and likely consequences of conviction is essential to provide constitutionally adequate representation during the pre-plea proceedings. Given the Court's repeated emphasis on the paramount importance of providing effective representation and competent advice regarding the likely consequences of conviction before entry of the defendant's guilty plea, it cannot be concluded that the prejudice caused by a violation of that duty can be categorically erased by a judge's general and laconic statements during the plea colloquy after that bargaining process is complete, and immediately prior to the court's acceptance of the guilty plea. See, e.g., *United States v. Cronic*, 466 U.S. 648, 656 (1984) ("[T]he adversarial process protected by the Sixth Amendment requires that the accused have 'counsel acting in the role of an advocate.'").

Indeed, as the Supreme Court in *Lafler* and *Frye* makes clear, if a full and fair trial or an otherwise voluntary guilty plea cannot "inoculate[] [counsel's] errors in the pretrial process" from collateral attack under *Strickland*, see *Frye*, 132 S. Ct. at 1407, neither can a trial judge's mere statements at a plea colloquy function to bar a petitioner from demonstrating that he was prejudiced

12

by counsel's deficiencies during the pre-guilty-plea stage of proceedings. More specifically, in *Frye* the Court rejected the State's argument that, despite counsel's failure to inform defendant Frye of a formal plea offer from the prosecution, he was not "deprived of any legal benefit to which he was entitled" because "the guilty plea that was [ultimately] accepted, and the plea proceedings concerning it in court, were all based on accurate advice and information from counsel." *Id.* at 1406. The State further contended that the "ultimate goal of the Sixth Amendment—reliability of Mr. Frye's conviction—was met by Mr. Frye's knowing, intelligent, and voluntary admission of guilt." Brief for Petitioner at 33, *Missouri v. Frye*, 132 S. Ct. 1399 (2012) (No. 10-444). As it did in *Padilla*, the Court expressly rejected the State's arguments that a guilty plea that was entered after the trial court fulfilled its obligation to ensure the voluntariness of that plea "supersedes errors by defense counsel." *Frye*, 132 S. Ct. at 1406.

Similarly, the Court in *Lafler* rejected the State and Solicitor General's argument that *Strickland* prejudice cannot arise from defective representation during plea bargaining if the defendant is later convicted after a fair trial. *Lafler*, 132 S. Ct. at 1385. The Court reasoned that "[t]he fact that respondent is guilty does not mean he was not entitled by the Sixth Amendment to effective assistance or that he suffered no prejudice from his attorney's deficient performance during plea bargaining." *Lafler*, 132 S. Ct. at 1388. The Court in both *Lafler* and *Frye* therefore made clear that if the defendant establishes ineffective assistance of counsel during the plea negotiation stage of proceedings, a subsequent, otherwise-voluntary guilty plea or even a full and fair trial does not necessarily "wipe[] clean any deficient performance by defense counsel during plea bargaining." *Id.* Likewise, a judge's admonition at the plea colloquy does not automatically "wipe clean" any prejudice caused by counsel's failure to advise his client of the immigration consequences of the

guilty plea. *Id.*; see also, *Frye*, 132 S. Ct. at 1406-08

To establish an ineffective assistance of counsel claim, Wilson must show that Robin's performance fell below an objective standard of reasonableness (deficient performance), and that there is a reasonable probability that, but for her deficiency, the result of the proceeding would have been different (prejudice). *Id.* As for prejudice, Wilson must show that but for the ineffective and erroneous advice of his counsel, there is a reasonable probability that he would have pled guilty, that the Court would have accepted his guilty plea, and that his conviction or sentence, or both, would have been less severe than the judgment and sentence that in fact were imposed. See *Lafler*, 132 S.Ct. at 1385.

It is well-settled that "[C]riminal justice today is for the most part a system of pleas, not a system of trials. . . . [T]he right to adequate assistance of counsel cannot be defined or enforced without taking into account the central role plea bargaining plays in securing convictions and determining sentences." *Lafler v. Cooper*, 132 S. Ct. 1376, 1388 (2012). Because of "[t]he reality [ ] that plea bargains have become so central to the administration of the criminal justice system . . .," *Missouri v. Frye*, 132 S. Ct. 1399, 1407 (2012), the Supreme Court has recognized that the Sixth Amendment right to counsel "extends to the plea-bargaining process. During plea negotiations defendants are entitled to the effective assistance of competent counsel." *Lafler*, 132 S. Ct. at 1384 (internal citations and quotation marks omitted); see also, *Frye*, 132 S. Ct. at 1407.

Accordingly, Wilson's attorney's performance during the plea negotiations phase of the proceedings was deficient and he was prejudiced by receiving a significantly harsher sentence.

# VI. CONCLUSION

For the above and foregoing reasons, Wilson's conviction and sentence should be vacated so that he can plea anew. In the alternative, it is respectfully requested that the Court hold an evidentiary hearing so that Wilson may further prove his meritorious grounds for relief, resolve facts in dispute and expand an incomplete record.

Respectfully submitted,

*Edward Wilson*

Edward Wilson
Reg. No. 80354-083
FCI BEAUMONT LOW
FEDERAL CORR. INSTITUTION
P.O. BOX 26020
BEAUMONT, TX  77720
Appearing *Pro Se*

# DECLARATION OF EDWARD WILSON

I, Edward Wilson, declarant herein, declare and attest to the facts in the above and foregoing Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody and Memorandum of Law in Support to be true and correct to the best of my knowledge under the penalty of perjury pursuant to 28 U.S.C. § 1746 and that I placed the Motion and Memorandum of Law in the mailbox of this institution on September 25 2015.

*Edward Wilson*

Edward Wilson

15